IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**ROBERTA FOSBINDER-BITTORF**
individually and on behalf
of all others similarly situated,

    Plaintiff,

vs.

**SSM HEALTH CARE OF WISCONSIN, INC.**

    Defendant.

Case No: 11-cv-592

---

**DECLARATION OF TRISHA BRATTEN**

---

I, Trisha Bratten, certify under penalty of perjury that the following is true and correct to the best of my knowledge and recollection:

1. I am adult resident of the state of Wisconsin. I live at 338 E Racine Street, Jefferson, Wisconsin, 53549.

2. I worked as a Registered Nurse at St. Mary's Hospital (St. Mary's), 700 South Park Street, Madison, Wisconsin, from March 10, 2008 to November 26, 2010.

3. During my employment, I typically worked on 8 Southwest, the Respiratory Unit.

4. During my employment, I also worked as a "mobile" or "float" nurse, and worked on the following floors in that capacity: 5 East, 3 Southwest, 4 Southwest, 5 Southwest, and the Mobile Unit.

5. When I began my employment I worked 8 hour shifts, 56 hours, 7 days, per pay period, during the night shift. I was subject to St. Mary's 8/80 pay rule, meaning St. Mary's paid me overtime compensation for all hours worked over 8 in a day or 80 in a pay period. Beginning September 2008, I worked 12 hour shifts, three days per week, during the night shift. I was subject to St. Mary's 12/40 pay rule, meaning St. Mary's paid me overtime compensation for all hours worked over 12 in a day or 40 in a week.

6. As a nurse at St. Mary's Hospital, during my entire employment, I was paid an hourly rate for all hours worked, subject to St. Mary's automatic meal period deduction policy.

7. During the entirety of my employment, St. Mary's automatically deducted 30 minutes pay from each shift I worked over 5.5 hours in length, unless I "canceled" the meal period for that day. Based on my personal knowledge and understanding of St. Mary's policy, all nurses were subject to the same automatic meal period deduction.

8. At the beginning and end of each work shift, I swiped my card into the Kronos time-clock. The time-clock rounded the time of my swipe to the nearest quarter hour. My pay was calculated based on the time between when I "carded-in" and the time I "carded-out," minus 30 minutes, which was automatically deducted for a meal break.

9. St. Mary's did not allow me to leave the hospital premises during rest periods or meal periods. I was required to remain on the hospital premises at all times during my shift in order to respond to "Code Blue" calls on my floor and to be available to assist with patient care.

10. A "Code Blue" refers to a situation where a patient is in cardiac or respiratory distress. Based on my experience as a nurse and my understanding of St. Mary's policy, it is imperative to have the treating nurse available in the event of a Code Blue. In these situations, a detailed history of the patient's recent symptoms or behaviors, or information regarding their medication can only be supplied by the treating nurse. The Charge Nurse on that floor must also return to the floor and attend to the Code Blue in order to oversee a quick and efficient response to the emergency.

11. If a situation required that I leave the hospital premises during my work shift, I was required to get approval from the Charge Nurse and to card-out using the Kronos time-clock.

12. During my entire employment, St. Mary's required that I carry a beeper to receive pages from Unit Clerks/Monitor Watchers regarding calls from doctors, other nurses, or the patients themselves. Normally, I handed my beeper to another nurse or the Charge Nurse while I took my meal break, but if they were unavailable, I kept the beeper with me while I ate my meal.

13. St. Mary's Tobacco-Free Policy prohibited the use of tobacco products on St. Mary's property. Because I was not allowed to leave St. Mary's premises at any time, in order for me to smoke, I was forced to violate one of St. Mary's policies. I took my smoke breaks on a sidewalk on Mills Street or a step off

the curb, which was technically outside of St. Mary's property, but which was close enough to return to my unit in a matter of minutes, if I was called.

14. When I was acting as Charge Nurse, I frequently carried a phone with me in addition to my beeper. I took this phone with me on my meal breaks so that I could respond to calls from my Shift Supervisor regarding hospital admissions or transfers or to answer questions about staffing.

15. During my meal periods, I frequently ate in the break room on my floor in order to be available to doctors, patients, and nurses. As a staff nurse, I was interrupted during my meal by doctors and nurses who had questions regarding my patients. Additionally, as a Charge Nurse, I was occasionally interrupted by the Shift Supervisor to discuss hospital admissions, transfers or scheduling.

16. I understood that I could cancel the automatic meal period deduction at the end of my shift by swiping a card through the time-clock and pushing a button that canceled the automatic 30-minute deduction. However, I did not cancel all deductions for all meal periods for which I worked, nor did I cancel the deduction for all meal periods in which I was interrupted. On occasion, I became too busy to remember to cancel the automatic meal period deduction. If I did not remember to cancel the deduction the day I did not receive a meal break, I understood that I could not correct the missed cancellation retroactively.

Executed this ___4___ day of January 2012.

*Trisha Bratton*
Trisha Bratten