IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERTA FOSBINDER-BITTORF,
individually and on behalf of all
others similarly situated

                      Plaintiff,                    OPINION AND ORDER

   v.

                                               11-cv-592-wmc

SSM HEALTH CARE OF WISCONSIN, INC.,

                      Defendant.

---

In this putative class and collective action, plaintiff Roberta Fosbinder-Bittorf alleges that nurses at St. Mary's Hospital performed work for defendant SSM Health Care of Wisconsin, Inc. during meal periods without pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 & 207, and Wisconsin state law. Before the court is plaintiff's motion for conditional certification and court facilitated notice under FLSA § 216(b) (dkt. # 28). Defendant opposes the motion, filing 29 declarations from other nurses and numerous exhibits.

While the court anticipates plaintiff may well have difficulty maintaining the proposed class, Fosbinder-Bittorf has made a "modest factual showing" at this preliminary stage that she and other class members are connected by defendant's potentially unlawful practice of taking automatic meal deductions from nurses in circumstances which it knew or should have known would result in uncompensated work. Accordingly, the court will grant her motion for conditional certification and court facilitated class notice.

FACTUAL BACKGROUND[1]

From July 10, 2006 until July 29, 2011, Plaintiff Roberta Fosbinder-Bittorf was employed as a nurse at St. Mary's Hospital, which is operated by defendant SSM Health Care of Wisconsin, Inc.  St. Mary's Hospital employs approximately 2,800 individuals, including approximately 1,000 nurses.  Nurses are generally assigned to one of the more than twenty-five clinical units based on the types of medical issues or patients.  In addition, some nurses are part of a "float pool" that works for various units depending on need. Fosbinder-Bittorf worked in the medical/surgical care unit, which treats patients who are hospitalized in connection with surgical procedures and need cardiac monitoring.[2]  Her supervisor was the nursing director for her unit, Kandace Harrison.

All of St. Mary's nurses are paid on an hourly basis.  Nurses assigned 12 hour shifts receive overtime when working in excess of those hours in a single shift or when working over 40 hours in a single week, while nurses assigned 8 hours shifts receive overtime when working in excess of those hours in a single shift or 80 hours in a single two-week period.  They record their hours on Kronos time clocks, which are touch screen devices located throughout the hospital and initiated by swiping a badge.  Nurses are required to clock in and out any time they leave the hospital premises.

According to official policy, the hospital deducts automatically 30 minutes from nurses' pay for a meal period during any shift over 5.5 hours. If the nurse works through the meal period or the meal period is interrupted, then the nurse may take a full 30

---

[1] The court sets forth the following background only for purpose of considering plaintiff's proposed conditional class and notice and without making any formal findings of fact.

[2] Once or twice Fosbinder-Bittorf worked a shift in another unit.

minute break later or, if that is not possible, then the nurse is required to cancel the meal period deduction. In its training manuals for nurses and nursing directors, the hospital explains:

> If an employee works during the meal period (normally a five minute or longer telephone conversation or any hands on work), the entire lunch period is considered work time. In this case, the employee needs to cancel their meal deduction in HRMIS).

Nurses can cancel the meal period by swiping into the Kronos system and selecting an option on the main screen or by filling out an analog "maintenance sheet."

Fosbinder-Bittorf knew that hospital policy required her to cancel missed or interrupted meal breaks and that she would be paid for that time. On at least a few occasion, Fosbinder-Bittorf did just that. HRMIS Maintenance Sheet, dkt. #67-5 (showing two incidents in which she manually canceled lunch period). On many occasions, however, her nursing director had no way to know whether she was working over lunch or not. This was because they often worked different shifts. While neither her nursing director nor any other hospital management questioned her for cancelling a meal period deduction, Fosbinder-Bittorf was often interrupted during her meal period and would forget to cancel the deduction due to her hectic schedule.

Fosbinder-Bittorf argues that the frequency of interruptions and the constant demands of patient care made it impractical to cancel every interrupted meal break and that nurses' meal breaks are frequently interrupted. For example, nurses are required to keep a cell phone, pager or beeper to respond to patient needs, and are told to pass to a "beeper-buddy" during meal breaks, but nurses "sometimes" keep their pager during meal

breaks because no one is available to take the beeper. Even when they pass off the beeper, nurses are often interrupted by doctors, residents or other nurses who seek them out in the break room or page them on the intercom.

According to official policy in the employee handbook for nurses:

> Employees are required to remain on the hospital premises and be available for work during the paid rest period, but activities are typically unrestricted during the unpaid meal period.

Nursing directors and other management employees are further instructed:

> Since the meal period is unrestricted activity, employees have the option to leave the hospital premises. However, if employees are expected to remain in the hospital during their meal period, and choose to do so voluntarily, this is permissible as long as alternative coverage is made available. Should the employee wish to leave the building she/he must notify the Nursing Administrative Supervisor, who will either arrange coverage or Instruct the employee to stay in the hospital and cancel the meal deduction on HRMIS.

According to the 29 declarations filed by defendant, nurses generally understand that they were permitted to leave the hospital during meal breaks. As a practical matter, however, most nurses find 30 minutes is too short a time to leave the premises given the size of the hospital and lack of nearby restaurants. Though several said that they took walks, most stay on the premises and engage in personal activities such as reading, watching television or socializing.

Despite this policy and the representations of others, Fosbinder-Bittorf asserts that nurses are *de facto* required to remain on St. Mary's premises by other hospital policies and responsibilities to their patients. For example, nurses are required to respond to any "Code Blue" (the emergency code when a patient needs resuscitation) on their floor,

4

because the treating nurse is most familiar with the patient's history. As a result, nurses must remain in earshot of the public address system to hear emergency codes, which prevents them from leaving the facility for lunch. In addition, several nurses testified that leaving the premises would threaten patient care regardless of emergency codes, because units are often understaffed and there is no backup nurse when ordinary patient problems arise. These assertions about the hospitals' *de facto* policy come from Fosbinder-Bittorf and the testimony from three other nurses.

In addition, Fosbinder-Bittorf represents that the time clock records for nurses at St. Mary's Hospital demonstrate how rarely they leave the premises. In the last three years, for example, time records indicate that nurses left the premises for a period between 5 to 45 minutes only 5,055 times, suggesting that nurses leave the hospital premises for a meal period on average once in every 200 shifts.[3]

OPINION

I.   **Motion for Summary Judgment**

As a preliminary matter, defendant urges the court to rule on its summary judgment motion before taking up the question of conditional class certification. Unfortunately for defendant (and perhaps the court) the cases cited in favor of this procedure involve vastly different procedural postures. In *Sullivan v. Greenwood Credit Union*, 499 F. Supp. 2d 83, 88 (D. Mass. 2007), the court granted summary judgment before ruling on Rule 23 certification, but only after the close of discovery and on the

---

[3] Even this figure may over-estimate offsite lunches, because it includes any time a nurse punched in and out regardless whether the nurse actually left the facility.

basis of its interpretation of contract language. In *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 254-60 (S.D.N.Y. 1997), the court stated that motions for judgment on the pleadings should be resolved prior to certification, but found that the defendant's motion improperly relied on facts outside the pleadings and rejected the defendant's arguments as a basis for summary judgment. In this case, plaintiff had only three months of discovery when its class motion was briefed, the discovery deadline was March 2013, and defendant's primary argument on summary judgment is that it lacked actual or constructive knowledge that Fosbinder-Bittorf in particular was performing unpaid work. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177-78 (7th Cir. 2011). Even if the court grants summary judgment against Fosbinder-Bittorf, the opt-in plaintiffs could simply refile the complaint in a new lawsuit, wasting time and resources. *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 970-74 (7th Cir. 1998) (discussing preclusive effect of FLSA collective actions).

## II. Conditional Certification of FLSA Collective Action
### A. Standard for conditional certification

Under the FLSA, a district court may conditionally certify a class to give the representative plaintiff an opportunity to send out notices to potential opt-in plaintiffs. 28 U.S.C. § 216; *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). This court had adopted a fairly standard two-step process for class certification under the FLSA. *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628-29 (W.D. Wis. 2009); *Sjoblom v. Charter Commc'n, LLC,* No. 07-cv-

451-bbc, 2007 WL 4560541, *7-8 (W.D. Wis. Dec. 19. 2007); *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). See *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases). In the first stage, the plaintiff need only make "a modest factual showing" that she and potential class members were "victims of a common policy or plan that violated the law." *Kelly*, 256 F.R.D. at 628-29 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). In other words, the plaintiff must offer modest proof of "some factual nexus" connecting her to other potential plaintiffs as victims of an unlawful practice. *Id.* (quoting *Clarke v. Convergys Customer Mgmt. Group,* 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005)).

This standard is "fairly lenient," *Adair v. Wis. Bell, Inc.*, No. 08–C–280, 2008 WL 4224360, at *3 (E.D. Wis. Sept.11, 2008); it does not involve adjudicating the merits of the claims, *Young*, 229 F.R.D. at 54 (citations omitted); nor does it entail the kind of rigorous analysis typical of class certification under Fed. R. Civ. P. 23. A lenient standard is appropriate, because conditional certification only permits the named plaintiff to notify potential plaintiffs to help them make informed decisions about whether to consent to join the suit, *Witteman v. Wis. Bell, Inc.*, 2010 WL 446033, *1 (W.D. Wis. 2010), and the statute of limitations for each plaintiff is not tolled until he or she actually consents to do so. 29 U.S.C. § 216(b); *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007). Once discovery is complete, defendant may file a motion for decertification and the court applies a more rigorous standard to determine whether the plaintiffs who opted-in are in fact similarly situated. *Kelly*, 256 F.R.D. at 629.

The court declines defendant's invitation to depart from this well-established practice and apply heightened review at the outset, at least where plaintiff had only three months of discovery when its motion was briefed and had taken depositions only of designated Rule 30(b)(6) witnesses. *Toure v. Cent. Parking Sys. of N.Y.*, 2007 WL 2872455, *3 (S.D.N.Y. 2007) (declining heightened standard for case pending two years because limited fact discovery conducted). A heightened standard is particularly inappropriate in this case in light of defendant resisting class-wide discovery, but then filing 29 declarations from potential class members to demonstrate they are not similarly situated to the plaintiff as a matter of fact.

B. **Similarity of Proposed Class Members**

Even under this more lenient standard, conditional certification is not a mere formality. *Ruiz v. Serco, Inc.*, No. 10-cv-394, 2011 WL 7138732, *4-10 (W.D. Wis. June 9, 2011). The plaintiff must provide admissible evidence that the potential class members are sufficiently similar that a collective action will facilitate efficient resolution of common questions and common answers. *Id.* at *6. To determine whether the plaintiff has met this initial burden, courts rely on the complaint and affidavits submitted by both parties. *Austin*, 232 F.R.D. at 606 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 682 (S.D. Fla. 2004)).

Fosbinder-Bittorf seeks conditional certification of the following class:

> All persons who have been or are currently employed by SSM as a nurse at St. Mary's Hospital and who have been denied

8

> minimum and/or overtime wages for on duty meal periods at any time three years prior to the commencement of this lawsuit to the present.

She contends the putative class members are similarly situated because St. Mary's Hospital employs a uniform automatic meal deduction and cancellation policy that has caused nurses to engage in unpaid work during meal period due to the urgency of patient needs, the nurses' heavy work load and defendant's policies about patient care, pagers, emergency codes and leaving hospital premises. According to Fosbinder-Bittorf, SSM Health Care knew or should have known that its policy resulted in nurses performing unpaid work, because the nature of nurses' responsibilities often prevented their taking time out for a meal, yet defendant's own records show the relative infrequency with which nurses cancelled their meal deductions.

Defendant challenges plaintiff's motion for conditional certification, arguing that the class members are not sufficiently similar that a collective action would promote efficiency. Although automatic meal deductions appear to be a recognized common fact pattern in the case law, there is no binding authority on whether conditional certification is warranted. Moreover, other district courts are split on the issue. Cp. *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 208 (N.D.N.Y. 2009) (certification appropriate for all employees at one hospital with patient care responsibilities because "the automatic meal deduction policy . . . in combination with the alleged short staffing and patient care demands . . . resulted in plaintiffs routinely working through or during scheduled meal breaks, without compensation, and with knowledge of administration at the hospital"), *with Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 941 (D. Minn.

9

2009) (upholding magistrate judge's denial of conditional certification). Often, however, courts refusing conditional certification would be asked to approve putative nationwide classes spanning various facilities. See, e.g., *Saleen*, 649 F. Supp. 2d at 941 (plaintiff submitted 112 declarations from employees working at 71 facilities in 24 states, out of a proposed class of 20,000 employees working at 820 facilities in 47 states).

Defendant argues that conditional certification is inappropriate in this case for four reasons. *First*, defendant appears to argue that its meal period deduction policy cannot supply the commonality for the collective action unless it is *per se* unlawful under the FMLA. Since bona fide meal periods are not compensable work time, 29 C.F.R. § 785.19, and a policy of automatic deductions for bona fide meal breaks does not violate the FLSA, defendant maintains commonality is absent. See, e.g., *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y 2009); see also Wage and Hour Div., U.S. Dept. of Labor Fact Sheet No. 53, The Health Care Industry and Hours Worked (July 2009), available at http://www.dol.gov/whd/regs/com-pliance/whdfs53.pdf (noting that FLSA permits automatic deduction policies and noting that "the employer must ensure that the employees are receiving the full meal break"). Even if an employer adopts a generally valid method for tracking hours, it can still be liable for unpaid hours *if* the employer knows or should know that this method does not track its employees' hours accurately. *See Kellar*, 664 F.3d at 177-78. In *Kellar*, the employer adopted a valid timecard policy, but the court still found it necessary to inquire whether the employer had reason to believe the employee was violating that policy by clocking in early. *Id.* At this point, the court does not understand plaintiff to be challenging the meal deduction

policy in the abstract, but rather under specific circumstances where defendant knew or should have known that she and other nurses similarly employed were working through meal periods without compensation.[4]

*Second*, defendant argues that Fosbinder-Bittorf has no evidence that St. Mary's maintains policies require nurses to remain on hospital premises. Defendant again appears to severely cramp plaintiff's actual claim and evidence into a strawman justifiably denied certification, even at this early stage of litigation. While defendant's official policy states that all employees "typically" may leave the premises for meals -- and its affidavits demonstrate that some nurses leave the premises without discipline -- plaintiff has made a sufficient showing that defendant's policy of requiring nurses to be available immediately for emergency situations effectively prevents many from leaving the premises. At this early stage, plaintiff has presented sufficient evidence to support conditional certification of the FLSA claim.[5]

---

[4] Some district courts have held that when an employer adopts a valid written policy, the employee must show that the employer also adopted "a policy-to-violate-the-policy," *Dado v. Speedway SuperAmerica LLC*, 2009 U.S. Dist. LEXIS 3816 (D. Minn. Jan. 20, 2009) (denying conditional certification because plaintiff had not shown a "corporate decision" to disregard its formal policy); *Frye v. Baptist Mem'l Hosp.*, 2010 WL 3862591, at *3 (W.D. Tenn. 2010) (*decertifying* class of hospital workers for meal deductions because plaintiff offered no evidence of de facto policy to discourage employees from cancelling deductions and no "substantial evidence" that defendant failed to monitor time worked). However, this rule appears to conflict with the Seventh Circuit's decision in *Kellar*, which is controlling. Regardless, at this stage, plaintiff has offered sufficient evidence of non-compliance to call into question whether the defendant may have failed to monitor a practice of uncompensated work.

[5] Because the issues are not the same under Wisconsin law, plaintiff's state claims are not at issue in this motion.

*Third*, defendant argues that Fosbinder-Bittorf cannot show the nurses are similarly situated, because the rate at which nurses cancel their meal break deductions varies across hospital units and varies for nurses within the same units. For instance, defendant asserts that nurses in the emergency room cancel the meal deductions 62% for their shifts, while nurses in the family suites cancel the deduction on average only 4% of the time. In addition, within the emergency room, nurses cancellation rates vary from 10% to 90%. In a similar fashion, defendant asserts that whether the nurses worked unpaid meal periods is not susceptible to class-wide resolution. An individualized inquiry will be necessary to determine how each nurse spent his or her meal periods, because whether an interrupted meal period is compensable under the FLSA depends on whether the time is spent predominantly for the benefit of the employer. *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996).

Unquestionably, the defendant here has offered substantial evidence suggesting there are differences in how often (1) nurses' are interrupted in different hospital units and (2) particular nurses fail to cancel the deduction. At this point, however, plaintiff has not conducted class-wide discovery to determine whether it is possible to define manageable subclasses or to identify reliable methods for estimating how frequently nurses worked during meal periods without canceling the deduction. *Espenschied v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) (recognizing duty of court and class counsel to explore the possible ways of overcoming problems in calculating individual damages). Moreover, the court is unable to evaluate the relevance of defendant's statistics to the specific merits of plaintiff's claim and will not speculate about whether

these statistics demonstrate that nurses are interrupted with varying frequency or that some nurses vastly underreport their interrupted meal breaks. The development of these arguments are much more appropriate for the decertification stage.[6]

*Fourth*, defendant argues that the class claims will require individual determinations about defendant's intent, similar to those that defeated certification in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Applying the rigorous standards of Fed. R. Civ. P. 23, the Supreme Court held in *Wal-Mart* that the plaintiffs did not satisfy the commonality requirement for a nationwide class action under Title VII, because they failed to establish defendant maintained a common policy that might supply the "glue" for millions of separate, sexist decisions by supervisors across the country. *Id.* at 2552-54. Defendant argues here that "the resolution of each nurse's claim depends on whether his or her director violated policy by knowingly permitting off the clock work." (Dft. Opp. Br., dkt. #68, at 20.) This is simply incorrect. While the FLSA claims require each plaintiff to prove defendant had "actual or constructive knowledge" that he or she was working unpaid hours and Fosbinder-Bottorf may prove this knowledge by showing that direct supervisors knew that she and other nurses were performing unpaid work, such individual factual determinations about supervisors actual knowledge are not necessary to prove that defendant SSM Health Care of Wisconsin or

---

[6] Even if the court determines at the decertification stage that the frequency of interruptions and cancellations must be resolved on an individual basis, the court could still certify a class for questions capable of collective resolution, such as whether defendant's policy was unlawful because it knew or should have known that nurses were working unpaid hours as a matter of course.

13

its administrators had actual or constructive knowledge that nurses were not generally paid for interrupted meal periods. *Kellar,* 664 F.3d at 177.

At this stage, Fosbinder-Bittorf has met her initial burden to demonstrate that there is "some factual nexus" between her and other potential plaintiffs as victims of a larger unlawful practice. Moreover, her proposed class does not present the type of "significant problems" that have justified denying conditional certification in other recent cases. *See Ruiz,* 2011 WL 7138732, at *10. Defendant's arguments will become relevant at the close of discovery, when defendant may move to decertify the class. At that point, the court will examine in detail the evidence and arguments submitted by defendant about whether the plaintiffs who opt-in are similarly situated. *Austin*, 232 F.R.D. at 605; *Gambo v. Lucent Tech., Inc.*, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005); *Flores*, 289 F. Supp. 2d at 1045. If the court finds at that time that Fosbinder-Bittorf is not similarly situated to the opt-in plaintiffs, it may dismiss her from the case and give the remaining opt-in plaintiffs a chance to file an amended complaint with a newly-named plaintiff or the court may decertify the entire class if the class members as a whole are not similarly situated. *Kane,* 138 F. Supp. 2d at 214.

### III. Class Notice

Defendant raises two objections to the proposed notice and court facilitated procedures. First, defendant objects to discovery of the phone numbers of potential class members as an unnecessary intrusion of privacy. Plaintiff has not responded to this argument, and the court agrees that notice by mail should be sufficient, subject to the

further requirement that the defendant shall post the notice in conspicuous places available to employees (for example, work bulletin boards).

Second, defendants object to a portion of the proposed notice that states

> "The representative Plaintiff in this lawsuit has entered into a contingency fee agreement with Plaintiff's lawyers, which means that **if there is no recovery, there will be no attorney's fees or costs chargeable to you from Plaintiff's lawyers.**"

(emphasis in original). Defendant correctly points out that the emphasis on the latter clause could be misleading, because it does not acknowledge that, if plaintiffs lose, the opt-in class members could be responsible for defendant's attorney fees. Plaintiffs have agreed to include the following phrase: "If you do not prevail on your claim, court costs and expenses may possibly be assessed against the class." With these changes, the court approves plaintiff's proposed FLSA collective action notice.

ORDER

IT IS ORDERED that Plaintiff Roberta Fosbinder-Bittorf's motion for conditional class certification and court facilitated notice (dkt. #28) is GRANTED. The court will hold a telephone status conference on April 5, 2013, at 10:00 a.m. Plaintiff to initiate the call to the court.

Entered this 20th day of March, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge